USDC - Eastern District - WI

Plaintiff: Victor R. Brown

V.                              Case #20-CV-319

Defendants: Daniel L. LaVoie; Jay VanLanen; Sue Peters; Justin Ribault; Jean Lutsey; Lucinda Buchannon; Rachael Matushak; Cassandra Baier; Cathy Francois; Drew Weyeker; Joshua Gomm; Tristan Retzloff; Alex Bonis; Miles Arney; James Maher; David Yang; Colin Frubrodt; Lori Alsum; Alan DeGroot; Brad Hompe; Cindy O'Donnell; John Kind; Michael Haese; Dylon Radtke; Todd Hamilton; Emily Davidson; Tonia Rozmarynoski; Larry Weber; Mary Leiser; Michael Glass; Lisa Doehling; Mr. Neveu; Mr. Gibbs; Mr. Cole; Mrs. Dr. Adams; Mr. Dr. Schmidt; Mr. S Schueller; Mr. Swietakowski; John Doe (CO); John Doe (CO); John/Jane Doe; 2 John/Jane Does (VSC); John/Jane Doe (OOS); John Doe (MB); Green Bay Correctional Institution.
    — In their Individual and Official Capacities

        42 USC 1983 AMENDED Complaint

1983                                    Case #

# 42 USC § 1983 Complaint

(A) Parties
① Plaintiff; USA Citizen; Resident of WI; Prisoner
of Columbia Corr. Inst. At times relevant to
the complaint and the issues within I
was housed @ the Greenbay Corr. Inst.

② Defendants – USA Citizens; Residents of WI.
Employees of the DOI

(B) complaint;
   Is written in "incidents" Numbering
from 1 through 6 and shall be joined
into one complaint in accordance w/ Fed.
Rules Civ. Proc. 20

(C) Jury
   I demand a Jury

(D) Jurisdiction
① Suing for a violation of Fed. law 28 USC
   § 1331
② Monell

42 USC § 1983 Complaint Case _____

(E) Claim — Incident one

① At all times following for claim incident one the date of incident was on or about 8/21/19 and the time was Appox 12:00 pm

② I was housed in the Green Bay Corr. Inst. at all times relevant to incident one.

③ In the RHU Building cell 505 after an altercation with an officer, Supervisors Jay VanLanen and Drew Weycker were called to my cell.

④ When they arrived at my cell I had my window covered with a towel to completely obstruct their view.

⑤ Captain VanLanen Knocked on my door but I ignored him as I was removing the Mirror from the wall.

⑥ LT. Weycker arrived at my cell while Capt. VanLanen disengaged himself a few feet away.

⑦ There he spoke to various employees about the situation.

⑧ Meanwhile I conversed with Weycker and notified him that I had my mirror off the wall and banged it against the door and sink to proove it. Capt. VanLanen was in earshot and heard this. I know this because I

42 USC § 1983 complaint  Case # _____

(E) Claim incident 1  (8) continued

could see him out the crack of my door.

(9) They both did nothing other than attempt to talk me into taking the towel down and coming out so they could get the mirror.

(10) After I denied them to take the towel down and hand out the mirror, I started to swallow 6 pieces of metal and shove a 2 inch long screw in my ~~arm~~ left arm at the crack of my ~~elbow~~, Left elbow.

(11) After I did all this I took the towel down and notified both Weycker ~~and~~ Capt VanLanen what I did; and I agreed to come out. ~~xxxxxxxxxxx~~

(12) When I came out handcuffed, I was then shackled with leg cuffs. ~~xxx~~

(13) For this officers Gomm, Bonis, Neveu, Arne, Maher, Yang; Gibbs - and I believe Retelaff were present including VanLanen and Weycker.

(14) I was then placed; un resisting; into the "Strap down" chair where seat belt like straps were crossed over my chest, lap and legs. My legs were first Velcro strapped to the chair, then ~~xxxxxx~~ my ankle chain was secured to that with a loop of sorts, then there was a seat belt strap like thing placed over that. All

42 USC 8 1983                                    Case #_____

(E) claim incident 1    (14) continued
"clicked" into place.

(15) for this there was no immediate checking
of the straps by a nurse. No checks at
all until I later on got strapped down in
the bed

(16) At this time Vanlanen told me "If you dont
let the Dr. take the screws out of your arm, you
are going to be strapped down" and I believe
he said I would also get a ticket. - Which is
a diciplinary action

(17) When we arrived to HSU Nurse Matushak
advised me that I would have to see Dr.
LaVoie.

(18) They then "wheeled" me to a holding room and
cuffed the strap down chair to a concrete
slab and shut the metal door locking me inside.

(19) In this room I spoke to PSU. and told
them about being threatened by Vanlanen. I said
I didnt want to be strapped down and this was
the only reason I was going to comply with
treatment. I didnt want to but felt I had
no other choice because of Vanlanen's threat
and coercion, techniques.

42 USC 1983                    Case #_____

(E) Claim - incident one continued -

(20) About 25 minutes later my arm was in serious pain from the screw and delayed treatment. And because of the multiple restraints my hips were in serious pain also.

(21) Dr. Daniel L. LaVoie arrived on unit then and I was escorted to the Rest. Housing Health Care room in the chair.

(22) Once there my left arm was uncuffed and cuffed again to a teather about 12 inch long and my left hand was placed in a "Glove" which prevented any movement of my fingers. I also had a split mask on - this entire time so far.

(23) I told the Dr. "I've been threatened and coerced into recieving treatment." Dr. Daniel L. LaVoie.

(24) Daniel LaVoie asked me. "Are you refusing?"

(25) I answered "No, I can't. I'm just letting you know."

(26) Daniel LaVoie then went into a back room to get some Metal tools.

(27) He then got down on one knee to my level so he could assess my injury.

(28) When he looked like he was about to start digging in my arm —

Page 6 of 31 No reverse

42 USC 1983                                    Case #_____

(E) Claim incident one contined

28) I asked him "Whoa, aren't you going to use anesthetics?"

29) He replied "No."

30) Immediately I felt something was amiss with Daniel LaVoie and I felt my safety and life was in danger.

32) I then attempted to use self defense techniques by headbutting Daniel LaVoie.

33) However, I was restrained.

34) Daniel LaVoie backed up and said "Well maybe you deserve to be strapped down in the bed."

35) I was then moved and placed in Gripp Bed restraints. "Strap down bed."

36) RN Matushak checked my Bed restraints.

37) At this point of the incident I was in severe distress.

38) A Capt Vanluven then asked me if I "Would consent to having the screw removed by Dr. Daniel LaVoie."

39) As it was my understanding that I was only being strapped down in the bed because of the screw in my arm and if I complied I would be released I felt that I had

1983

Case

(E) Claim incident one ~~~~~~~~ (39) continued

No **other reasonable option** but to consent so I said to Capt Vanlanen "Yes." Under severe Duress.

(40) Capt. Vanlanen then asked Daniel LaVoie when he arrived inside the room, If he could keep his body camera recording throughout this medical proccedure.

(41) The Doctor, Daniel LaVoie stated "Yes."

(42) I was not asked and did not give my consent to this.

(43) Daniel LaVoie gathered his metal tools and ▆▆▆ ▆▆▆ at this time I told Daniel LaVoie "I want you to use anesthesia."

(44) He answered "No. You stuck a screw in your arm, not me, and this is a consequence of your actions."

(45) He then started Jaming the metals tools in my arm causing me to bleed and causing me extreme agony.

(46) I immediately started yelling at him "Stop! I need a break! You're hurting me! Stop!"

(47) He said again "No, this is a consequence of your actions. If you didnt want this, you should've stuck a screw in your arm."

(48) I then heard a C.O. say "He needs a

Page 8 of 31
see pg 9

42 USC 1983                              case # _____

Break stop." SGT. Tristan Retcluff
⑲ I again told Daniel LaVoie "That's enough, stop!" but Daniel
LaVoie continued jamming his tools in my arm causing more bleeding
and even more pain pushing the screw inside deeper.
㊿ I attempted to move away by thrashing my body away from
Daniel LaVoie but Capt. Vanlanen ordered his staff to place their
hands on me in which Maher; Comm; Retcluff; Weycker; Boris
Fruebrodt; neveu; Arne; Yang; GIBBS held me down and
and stood by knowing
I was refusing treatment and knowing that Daniel LaVoie was
hurting me.
�51 I continued to yell "I refuse you fucker, I refuse!" and struggle
against staff in an attempt to get away from LaVoie. But still
LaVoie continued jamming his tools in my arm causing more blood and
pain. So much that I was reduced to screaming in agony.
�52 Daniel LaVoie then stated to Capt. Vanlanen "I thought he
consented?" To which Vanlanen Responded "He did."
�53 All this went on for apprx 10-20 minutes.
�54 I said again loud, clearly in a yelling voice "I refuse,
I refuse, I refuse!"
�55 At this time Capt Vanlanen ordered Daniel LaVoie to disengage
which he did so.
�56 I requested from Dr. LaVoie for some effective pain treatment
He answered "No." and left.

42 USC 1983                                          case

⑤ claim 1 cont...

㊄ I was left in the strip down bed for appx 4 hours before
finally getting sent to the hospital.

㊿ at appx 4pm at St Vincents hospital, officers Wisniewski,
2 John Doe officers and LT. Cole were on escort with me
to recieve treatment for the above detailed incident.

㊾ Health care personal assessed this injury and deemed it obvious
that I required local anesthesia for the removal of the screw.
for which the proceedure was accomplished without pain and under
5 minutes.

⑥⓪ upon completion the Health care staff deemed it necessary to
close the wound with stiches but at this time CO Wisniewski
told the Dr./nurse "I dont want you to use stiches on mr.
Brown".

㉛ The Dr/Nurse looked at him and asked "Why not?" to which
CO Wisniewski stated "Because I believe he will just remove them."

㊷ I then told the Dr/Nurse "No I wont, I want my arm to heal
as fast as possible please do what you think you need to do not
what this CO says who's not a medical pofessional."

㉝ Wisniewski then ordered the Dr/Nurse "I'm ordering you
not to use stiches because the prisoner will just remove them."
He said this forcefully and in a threatening manner.

㊹ I saw that the Dr/RN was intimidated and said "Ok I
guess we can use steri strips but they wont be effective.
Mr Brown if they come loose or off notify your facility and

42 USC 1983                                    case

Claim 1 (64) cont...

They will put new ones on.

(65) LT. Cole (wisniewski" supervisor) just stood there
without intervening as did the other 2 John Doe CO'S.

(66) Back at the inst. 5 minutes later after being placed in my
cell the steri strips came off Because I was sweating so
much in the heat so when I saw a nurse the next morning
"Rachel Matushak" she stated that orders from Daniel
LaVoie were to leave the wound alone to heal with
secondary intention, which basically meant refuse any treatment.

(67) As a direct result of this order my arm got
infected twice to which I was refused any treatment
because of Daniel LaVoies order and my wound didn't
heal until November

(68) In the course of the investigation of Daniel LaVoie
Lori Alsum and, Alan DeGroot; Brad Hompe; and
Cindy O'Donnell all falsified Reports saying that I
"consented to care" and that Daniel LaVoie did not violate
the standard of care or do anything wrong.

(69) Remedies Exhausted
   · GBCI- 2019-15/94
   · GBCI- 2018 -16096
   · GBCI-2018 -16 714

1983                           Case

~~[scribbled out text]~~

~~[scribbled out text]~~

(F) Incident two \ claim

① the dates relevant to this incident are between 8/22/19 and 10/17/19 in the a.m.

② This incident involves Jean Lutsey; RHU HSU Scheduling employee for ~~the~~ prisoners to see Health officials John/Jane Doe ~~and everybody else~~ ~~[scribbled out]~~ Daniel LaVoie

③ on three—five occasions I was notified by R.N. Matushak and R.N. Alsteen (not a defendant) on all these occasions that I was scheduled to see Daniel LaVoie for "follow up" this was the pretense I was given.

④ For the safety of my person and very possibly the safety of my life I was forced to refuse treatment from Daniel LaVoie. ~~Jean Lutsey and Daniel LaVoie~~

⑤ ~~Several~~ times I asked for Sue peters to be scheduled to see me instead. I was refused.

⑥ I was under intuitive impressions that this was done with some malicious reasoning mainly because when the RN's came to my door to notify me that I was to see Daniel LaVoie they came ready with "refusal forms".

Page 13 of 31   See reverse

1983

Case ____

(F) incident two claim — continued

(7) The refusal form I signed noting that I was in fear of my life and safety. ~~coms~~ ~~these~~. from Daniel Labbe on the forms

(8) Remedies exhausted GBCI-2019-17887

(G) Incident three Claim

(1) This incident happened on two different dates. 10/10/18 through about 12/3/18. and 8/21/19 thru 10/17/19

(2) This incident involved Dr. Hamilton, Dr. Adams, John Kind, Dr. Schmidt, Jay Van Caren. and possibly others unknown until Discovery

(5) The first incident was on/about 10/10/18 though ~~entire~~, on/about 12/3/18.

(4) I was placed in a cell and housed there from on/about the above dates that lacked an emergency call button.

(5) So that in many incidents I was unable to properly, and in a timely fashion — to notify staff of my emergencies, which mainly turned out to be all self harm & self harm thoughts.

(6) I attempted to resolve the problem w/ all the above defendants (#2) and was refused a cell with any emergency call button.

(7) The next incident happened on/about 8/21/19

19.13

Case #

⑥ Incident three claim ⑦ continued through on/about 10/17/19.

⑧ again I was placed in a cell that wasn't safe and had no emergency call button.

⑨ I tried to resolve the issue with Capt. VanLanen

⑩ However he refused to move me to a cell with an emergency call button.

⑪ Remedies exhausted.
  ⓐ GBCI-2018-24886
  ⓑ GBCI-2019-16420


② As a result of this all ICRS employees A. Degroot; S Schueller; E. Davidson; C. O'Donnell; M. Haese; B. Hompe are added as defendants to this claim by failing to take action to put me in a safe housing area when these issues were brought to their attention. through the ICRS


④ Incident four claim

① This incident happened throughout the year of 2019 dating back from May through 10/17/19

② This incident involves Rozmarynoski; Swietlkowski; J. VanLanen; J. kind; Radtke; Office of the secretary John/Jane Doe; Victim Services Cordinator John/Jane Doe; L. Webber;

See reverse

1983                    Case _____

(H) Fourth claim (2) continued
Brooks;

(3) These Defendants named did nothing to prevent
inmate Jeffrey Scotts continuous sexual harrassment
towards me.
(4) They in fact not only refused to separate us
when this sex-harrass- was brought to
their attention, they puts this inmate closer
to me at recreation in retaliation for writing complaints about it.
(5) And when they even found my PREA claims
to be substantiated they still claimed there
was no reason for us to be separated even though
he was found guilty for sexual misconduct
twice and multiple PREA claims found against
inmate Jeffrey Scott.
(6) "They" is the above defendants.
(7) I notified each of the above defendants of
inmate Scotts sex-harrass in writing and
verbally and in investigative proceedures. There
was video recordings of his sex harrass- toward
me even, still they did nothing.
(8) I followed all Policies and proceedures in
attempt to get us separated.
(9) All the defendants denied me, saying that

see pg 18

1983

Case _____

(H) Sixth Claim (9) continued

"wasn't a problem" and that "I would just have to deal with" his sex-harrass. "It's Segregation what did I expect?"

(10) Weyeker, VanLaren and Rozmarynoski said variations of that.

(2) Of course I responded "Just because I'm in Seg doesn't mean I should have to put up w/ sex-harrass - especially when there's a ready available remedy to the situation.

(3) I even filed a Prisoner Request for Separation DOC 1803

(4) John Kind responded only "After review" "Separation is not warranted"

(5) He knew about all the sex-harrass- and that we were housed close together and still refused to take action.

(10) The Victim services cordinator at CoBCI and CCI all refused to speak to me about this when I wrote them they wouldn't even respond.

(17) Brooks refused to send me a Temporary Restraing order (Petition) when I asked him multiple times instead always sending me the wrong forms. He knew about the Sex-harrassment ever I told him.

(18) I wanna Proceed with Retaliation

"Separation is not warrented" from John Kind


1983                                          case
(A) ~~Foster~~ incident claim    (B) continued
claims @ Deliberate Indifference claims against these defendants as
well as possibly cruel and unusual punishment.
  (7). Remedies Exhausted : GBCI- 2019-10770 ; DOC 1803 ; letters to
Victim Services coordinators


(II) Incident ~~Fikes~~ claim
(1) This incident involves CO Walton (and M Leiser and M Colassy), Capt. J. Vanluren ; John Doe,
(2) I became aware of this incident on 10/12/20 while housed in
RHU @ GBCI as property officer Walton came to my cell and told
me that he and capt Vanluren has been withholding over 20
publications that came in the mail for me because they have staples in
them.
(3) I asked him 2 questions
   "Why weren't the staples taken out and then given to me. ?"
   "Why wasn't I provided with any type of notice? ?"
(4) Walton answered "Because policy states we cannot" and "That
is not my dept. I don't know."
(5) It is waltons job as a property officer to document all publications
that came into the inst so he would be in charge of notification
of non delivery of such publications
(6) It is J. Vanlurens job to supervise all RHU officers which Walton
is. Vanluren has also taken the job of searching my property
every so often to ensure I don't have contraband (ensuring my safety from
self harm) so he would know from those searches that I had all

1983                                    Case

These publications with staples in them. And he has asked me
to stop ordering publications with staples in them because he
doesn't want me to accidentally recieve one which would put my
safety in teopardy as I could use the staples for self harm. So
He definately knew about these publications coming in and
subsequently has to know that I'm not recieving them or
any notice of non delivery.
(5) Benedies Exhausted cci-2019 - 19162  which was
originally submitted on ~~10/18/89~~ 10/18/79  However M. Leiser
and M. Glass prevented me from filing it  by returning it to
me several times unfiled.


(1) Incident ~~eight~~ (six) Claim
(1) This incident involves the following Defendants
    Daniel LaVoie, sue peters; swiekutowski; Cummings; Jean
Lutsey; Baler; Cathy francois; Dr. Ribault; Buchannon;
A. Degroot; L. Alsum; B. Hompe; C. O'Donnell
M. Glass; M. Leiser; L. Doehling


(2) And they have all denied me effective pain treatment.
(3) since approximately June 2017 through current date 2020
I have sought effective pain treatment from the above defendants.

1983                                           Cont.

(1) **6** continued

(4) Sue peters, Daniel Lavoie and Justin Ribault are all medical personell with medication perscribing Agilityes.

(5) On every oppertunity that I saw them I've sought a pedsription for the nerve pain in my arms and my bunion pain. I've told them on each of these occasions that tylonol, Ibuprophen, Naproxen do not work and daily intake of then i pobobly doing more harm than good.

(6) Despite this they would either increase the dose or tell me that this is all they will give me. They also told me that I have to try certian medications before they can even prescribe anything stronger.

(7) Daniel Lavoie is the only one who refused to prescribe any pain medication for me at all.

(8) Sue peters perscribed me Duloxitine which I tried and told her was not working. Despite this she continued the perscription until I moved to Justin Ribaults care and I told him it wasn't working which he did nothing about.

(9) because of this I started refusing the medication.

(10) Since this Ribault has continued to both refuse me any pain medication and proscribe me inneffective pain medications.

(11) Even when Hospital Dr's whith much higher credentials then Ribault have perscribed me Gabbapentin which is effective and told me that my need for something like Gabbapentin and my pain is obvious and he doesnt know why I'm not on it already, Dr. Ribault

1983                                            case

① & claim ⑪ continued

has seemingly maliciously discontinued those perscriptions
despite knowing that It helps me and there's no chance
for abuse in my housing

⑫ Peters, LaVoie and Ribault have all refused to
provide me with effective pain treatment

⑬ Jean Lutsey and Lucinda Buchannon are both Health
services managers in charge of overseeing Peters, LaVoie and
Ribault and so when I brought the issue up to their attention
of them not providing me with effective pain treatment They
took absolutely no action despite knowledge of the issue. I
know they know about the issue because I have responses from
them showing that they recieved my letters asking them to help
me get pain treatment.

⑭ A. DeGroot; L Alsum; B. Hompe; C'O'Donnell; M Gloss
M. Leiser; L. Doehling are all members of the ICRS
(Inmate Complaint Review system) and each of these
members had the oppertunity to help provide me with
effective pain treatment when I brought the issue to their
attention through the use of the ICRS They could have
properly investigated my issue and Affirmed my complaint
requireing medical personell to provide me with effective pain
treatment. Despite this they did not.

1983                                    Case _____

(B) Constitutional Violations claimed for each
incident and reasons why.

① Incident one claim

ⓐ ● Defendants ~~David Reeve~~ Joy VanLanen and
Drew Weyhler:

● Deliberate Indifference to my serious medical needs:
Both defendants knew I had my mirror off of the wall
and subsequently had alot of metal which undoubtedly did
bring up the concern that I would harm myself with
that metal. They knew or should've known this due
to my extensive self harm history in which both defendants
were aware of from their daily dealings with me. - I suffered
severe injury - screw in arm.

ⓑ ● Defendants Rachael Matushak

● cruel and unusual punishment or treatment: Deliberate Indifference
Defendant knew I was being strapped down in the
chair restraints and knew failure to check those restraints
should something be wrong could result in medical
problems that could be a serious danger to my health.
Despite this knowlege she failed and refused to check
my straps while in the chair. I suffered risk of
injury.

Page 31 of 31    no reverse

Case 2:20-cv-00319-LA   Filed 09/04/20   Page 21 of 31   Document 10

1983                          Case #___

○ Defendants Jay Vanlanen
  Cruel and unusual punishment:
  Defendant knew that threats and coercion
  to recieve medical treatment was malicious and
  beyond the means of anything remotely socially
  acceptable - Injury suffered forced treatment.

④ Defendant Daniel LaVoie:
  cruel and unusual punishment and treatment;
  Deliberate Indifference; Retaliation; Criminal
  Negligence; Criminal Assault and battery; Crime
  against humanty
   Defendant knew that I was being threatened
  and coerced into recieving treatment, but treated
  me anyway.
   Defendant retaliated on me showing anger at my
  self harm actions by refusing me anesthesia for
  a very painful proceedure Defendant was not
  qualified to perform anyway; Continually retaliated
  on me for attempting to head butt him by
  telling me I "deserve" to be strapped down; treating
  me when I refused further treatment. and causing
  me extreme agony. Telling me that the pain

1983                                          Case

(R) constitutional Rights Violations - each incident ① (d) continued
"was a consequence" of my self harm and if
I "didnt want" it I shouldn't've self harmed.
Defendant did this with obvious malicious intent.
Defendant Torchured me. Then denied me effective
pain treatment for my extruciating agony.

(e) Defendant Jay VanKanen
    Cruel and unusual punishment and treatment;
Assault and battery; Deliberate Indifference;
Crimes against humanity; failure to protect.
    Defendant ordered officers under his controle
to hold me down so Daniell LaVoie Xould
torchure me against my consent for treatment
and encouraged LaVoies actions by insisting
I consented even when I verbally refused
loud and clear multiple times. Defendant
knew this but disregarded And took measures
to worsen the situation.

(F) Defendants Gomm; Retzloff; Bonis; Neveu; Arne; Maher;
Yong; Gibbs; Matushak
    Deliberate Indifference; Failure to protect

                23 ~~of~~ ~~5~~ of 31  no reverse

1983                                          case

(Ⓐ) Const. Violations          (ⒹⒻ) cont...

    Although I cant Blame these defendants personally because they seemingly were intimidated by VanLanen ~~is~~ They still could've stopped LaVoie from basically torchuring me ~

   ② Incident two claim
    Jean Lutsey; John/Jane Doe; Daniel LaVoie
    - Failure to protect

    These defendants put me at severe risk of harm (knowing abouts what happened previously with Daniel LaVoie) by continuing to schedule me to see him even though my ~~is~~ regular Doctor was sue peters and ~~they nothing~~ Thus caused me more injury when I could not see LaVoie for my cuts due to the risk of him injuring me More than he did already. I had legitamate Fear and reason to believe he would continue to try and hurt me from our previous encounters. And LaVoie was wrong not to remove himself from trying to see me. He wanted to see me solely to hurt me again

1983                    Case

(B) Constitutional Violations - Continued

③ Incident three (k) claim

Defendants Dr. Adams; Dr. Schmidt; Dr. Hamilton; Joy
VanLanen and John Kind

- Deliberate Indifference to my serious medical needs and
failing to protect; Due process Violation

- As a prisoner on a Behavioral Management plan, it is the
decision of all the above defendants to choose where to house
me and why. Defendants Knew of my tendencies to savagely
self harm and [even if I don't tell someone before hand] I will
~~usually~~ use the emergency call button to notify officials
immediately afterwards to recieve treatment. Placing me
in a cell without an emergency call button effectively prevented
me from notifying officials of my self harm and suicidal thoughts
so that I could not effectively recieve immediate treatment.
And even after I had harmed myself multiple times in
this cell without an emergency call button and requested in
writing to each defendant and verbally multiple times to
Joy VanLanen] All defendants still refused to move me even though
they knew the risks of harm to myself outweighed any security
concerns that they claimed. To which their claims that I
damage emergency call buttons were false anyway. They
failed to protect me from the risk of harm and further harm
by failing to safely house me In a cell where I could
Notify officials immediately of my emergencies and denied

1983                          case

(K) Constitutional Violations (5) continued

me due process when I notified them of the issue
and they failed and refused to ~~edd~~ bring the issue to My
Behavioral Management Plan meetings. Housing me in a
cell with an emergency call button would have better enabled
the defendants to protect me from self harm as I
often notify officials via emergency call button of my
desires to self harm.

Defendants Degroot, Schueller, Davidson, O'Donnell also
failed to protect me by not taking actions appropriate to
my need of risk when the issue was brought to their attention
in the Inmate Complaint Review System. (ICRS)

(4) Incident four Claim

Defendants; Kozimaynooski; Swiethowski; Jay Vanlanen; John kind;
Dylan Radtke; OOS John/Jane Doe; Victim Services Cordinator John/
Jane Doe

− Deliberate Indifference; Failure to Protect; Violation of the
Federal PREA standard. Cruel and Unusual Punishment
                    multiple
    I made PREA claims against another inmate − They refused
to separate us. As a result this inmate was put next to
me and allowed to sexually harrass me for months on end.
                                        multiple
Even after my claims were substantiated and ~~and~~ Disciplinary actions
were taken against the inmate and I filed a Request for
separation − the inmate and I were not separated. Defendants
Violated the Fed. PREA standard and failed to protect me when

1983
Case

(A) Constitutional Violations - (4) continued

They were made aware of the sexual harrassment and were Deliberately indifferent to that knowledge by Failing to separate us knowing the refusal to do so would enable the accused to continue his sexual harrassment to me. I have the right to be free from sexual harrassment.

— Incident 5 seven - Claim

(5) Defendants; Walton; VanLanen, Leiser, Glass,
— First Amendment right to reading materials and magazines; Due Process rights violation; Equal protection.
— Defendant Walton, failed to provide me with a Notice of any kind that I was recieving publications. And they were being denied in any form or reason.
— Defendant Walton who is the BH property officer refused to give me my ordered publications because they had staples in them and refused to remove the staples which might only take 10 seconds. However in Wisconsin Secure Prison facility (WSPF) they do this service for prisoners who recieve publications with staples. They remove them. I am a similarly situated prisoner as the prisoners in WSPF RHU so I should be treated the same.

P - 27 of 31 no reverse

1883                                          case

(K) Const. Violations
   (6) incident 6 ~~fith~~ Claim
   Defendants; Danielle LaVoie; Sue peters; Justin Ribault;
   Jean Lutey; Lucinda Buchannon; Cassandra Baier; Cathy
   Francios; Swiekatowski; S. Cummings; M. Tallier; A DeGroot
   L. Alsum; B. Harpe; C. O'Donnell; M. Leiter; M. Glass; L. Doehling
   Deliberate Indifference to my serious medical needs
   All defendants have denied me effective pain treatment throughout
   my incarceration. Each defendant was notified of my significant
   pain of current and past medication being inneffective in person
   or in writing and still refused to take action that would permit
   me to recieve effective pain treatment.
   (7) Defendants Not Mentioned above
   (a) Radtke, Haese, John, kind all knew about the incident with
   Daniell LaVoie on 8/21/19 because the investigators Wickman and
   Cummings told them despite this knowledge all ~~such~~ 5 defendants
   above failed to prevent further contact with Daniel LaVoie
   risking further injury upon me creating my inability to be medically
   treated for two months.
   (B) Radtke; Haese and two John Does all knew about Jeffrey
   Scotts sexual Harrassment toward me from PREA reports and
   Filings through the ICRS
   (C) L. Weber, refused to report Jeffrey Scotts sexual Harrassment
   against me even though he did it right in front of him.
      — Remedies Exhausted —

(1983) Continued

Ⓑ Relief Requested

   ① Monetary Damages

    ⓐ Actual Damages

    · Physical and Mental Suffering : 1 Googol american dollars [ a "Googol" has one hundred zero's ]

    · Out of pocket expenses : To be determined

    ⓑ Nominal Damages : #1

    ⓒ Punitive Damages : 1 Googol American Dollars

   ② Equitable Relief

    ⓐ Charges of Assault and battery brought against Daniel LaVoie and Capt Jay Vanlanen

    ⓑ Fire Defendants :

     Daniel Lavloe ; Jay Vanlanen ; Sue Peters ; Justin Bibault; Rachael Matushak ; John Doe Wisniewski ; John Doe Cole ; Jane Doe Rozmarynoski ; M. Glass ; M. Leiser ; ~~XXXXXXXXXXXX~~

     - from the Doc/DAI

    ⓒ All my current criminal charges dropped.

    ⓓ Expunge my Criminal History.

    ⓔ Release me from imprisonment.

Case 2:20-cv-00319-LA   Filed 09/04/20   Page 29 of 31   Document 10

③ Injunctive Relief

   ⓐ Removal of staples from all publications
for All ~~Units~~ ~~every~~ Restrictive housing
Units in All Dept. of. Adult. Inst.

   ⓑ Do not deny prisoners publications just
because they ~~do~~ ~~cont~~ have staples in them.

Case 2:20-cv-00319-LA   Filed 09/04/20   Page 30 of 31   Document 10

1983                                          case ⎯⎯⎯

I swear that the foregoing is True to the
best of my knowledge. I swear this under
penalty of perjury with my signature below.

Signed sincerely and ~~forever~~ in Virtue on
this __9__ day of __August__ 2020

_(signature)_

P- 31 of 31 (end)